Michael SHANAHAN, Plaintiff–Appellant,

v.

The CITY OF CHICAGO, a municipal corporation, Richard M. Daley, both individually and in his official capacity as the mayor of the City of Chicago, Raymond Orozco, both individually and in his official capacity as fire commissioner of the City of Chicago, and William Alletto, Defendants–Appellees.

No. 95–1929.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 8, 1996.

Decided May 6, 1996.

 

James P. Chapman (argued), Chapman & Associates, Chicago, IL, for Plaintiff-Appellant.

Mary L. Smith, Lawrence Rosenthal, Patrick Rocks, Jean Dobrer, Nancy Van Allen, Benna R. Solomon, Timothy W. Joranko (argued), Susan S. Sher, Office of the Corporation Counsel, Appeals Division, Chicago, IL, for Defendants-Appellees.

Before EASTERBROOK, DIANE P. WOOD, and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

A mayor named Daley and a disgruntled city employee—some might say politics as usual in Chicago. Michael Shanahan would disagree. He says Chicago politics, usual or not, violated his constitutional rights. Shanahan brought this action pursuant to 42 U.S.C. § 1983 and the consent decree entered in *Shakman v. Democratic Org. of Cook County,* 481 F.Supp. 1315, 1356–59 (N.D.Ill.1979), *vacated, Shakman v. Dunne,* 829 F.2d 1387 (7th Cir.1987), *cert. denied,* 484 U.S. 1065, 108 S.Ct. 1026, 98 L.Ed.2d 991 (1988). He alleged that he was demoted in violation of his First and Fourteenth Amendment rights and the *Shakman* decree. Specifically, Shanahan says he was demoted within the Chicago Fire Department (CFD) because he refused to hire machinists who were political supporters of Mayor Richard M. Daley. In his complaint, Shanahan named as defendants the City of Chicago, Mayor Daley, Fire Commissioner Raymond Orozco, and Deputy Fire Commissioner William Alletto. The district court granted summary judgment for the defendants and denied Shanahan's Rule 59(e), Fed.R.Civ.P., motion to alter or amend the judgment. Shanahan appeals, and we accept, as we must at this stage of the case, his view and slant of the facts.

Shanahan was hired by the City as a firefighter in 1965. He was promoted to Lieutenant in 1980 and appointed Director of Apparatus Maintenance, Repair, and Supply for the CFD in March 1983. To assume the new position, he took a leave of absence from his career service spot as a lieutenant in the CFD. As of May 1989, Shanahan reported

directly to Deputy Fire Commissioner Alletto, who in turn reported to Fire Commissioner Orozco. As director, Shanahan was head of the CFD's central equipment repair facility (the "shops"), supervising over one hundred employees, both uniformed and civilian. The civilian employees included workers of various trades—machinists, carpenters, blacksmiths, electricians—plus a clerical staff. Although Shanahan did not have the final authority to hire employees, he evaluated candidates and made recommendations to his superiors, Alletto and Orozco.

Machinists working at the shops, as well as other city departments, are members of Local 126 of the International Association of Machinists. Local 126, through its members and leadership, is a long-time supporter of the regular Democratic Party of Cook County and its favored candidates, particularly Mayor Daley and his father, the late long-time mayor of Chicago, Richard J. Daley.

The City has a collective bargaining agreement with Local 126. Under the CBA, all persons employed at the shops as machinists are to be members of the bargaining unit represented by Local 126. The CBA requires that the City fill vacancies at the shops with persons already employed as fire department machinists—all of whom are members of the Local 126 bargaining unit—if any are able to perform the work. If no fire department machinists apply, or if none can do the work, the CBA requires the City to look to the layoff and reinstatement lists for qualified persons. All persons on the layoff and reinstatement lists are members of the bargaining unit Local 126 represents. If no one can be found on the layoff and reinstatement lists, the CBA tells the City to look to other departments for qualified machinists, where, of course, other members of Local 126 can be found. To step outside these requirements and hire someone who is not with the union, the City must demonstrate that the candidate has demonstrably greater skill and ability than all of the Local 126 bargaining unit members, no matter where they might be in Chicago. If the City hires such a person, she must become a Local 126 member.

In 1990, machinists positions were open in the shops. Three employees of the City's department of general services—members of Local 126—applied for the jobs. The City department of personnel determined they were eligible for the positions. After interviewing the applicants, Shanahan did not recommend them for the positions. He believed they were not qualified to perform the highly skilled work on fire apparatus. The three disappointed applicants grieved the City's failure to hire them with Local 126.

Mayor Daley's office, unlike, it is said, other administrations, directly involves itself in disputes between labor unions and city departments. Consequently, Tom Faul, a union official, brought the three machinists' grievances to the attention of Joan Cole, the director of labor relations for the City department of personnel. She investigated the grievances and determined that they were meritorious. In addition, the union also brought the grievances to the attention of Michael Broderick, the City's assistant director of intergovernmental affairs.

In June 1990, Assistant Director Broderick and another city employee met with Shanahan. Defendants contend that at the meeting Broderick informed Shanahan that under the CBA, the three grievants should be hired. In contrast, Shanahan asserts that he was not informed of the grievances at the meeting. The parties do agree that Broderick told Shanahan that he should inform him of openings at the shops and that he would give Shanahan the names of persons who should be hired. After the meeting, Shanahan told Fire Commissioner Orozco what Broderick had said. Orozco replied that he would take care of any problems with Broderick. Later Broderick called Shanahan and instructed him to hire the three men. Shanahan refused.

Still later, Orozco and Alletto told Shanahan that people "downtown" wanted his job; that it was a "political thing" and he should talk to someone, perhaps his ward committeeman, to help him. A week later, Alletto presented Shanahan with a letter of resignation to sign. Shanahan refused. Orozco then asked him to resign and he refused. Orozco then instructed him to take a leave of

absence, which he did. He was later sent to the training academy and demoted back to his position as a lieutenant near the end of 1990.

Early in 1991, positions were posted at the shops. Again the three grievants applied, along with twelve others, all of whom were employed by the City as machinists and members of Local 126. The three original applicants were hired.

There is no evidence showing the political affiliations of the three machinists and none of the three were involved in Mayor Daley's election campaigns. Two applicants actually were never involved in political campaigns or engaged in any political activities, except voting and the third has not been involved in political activity since 1983. Neither Broderick nor Orozco had knowledge of the political beliefs or affiliations, if any, of the three job seekers.

Shanahan asserts that Broderick knew the three machinists were members of Local 126, one of the 226 unions which make up the Chicago Federation of Labor, an entity that supported Mayor Daley's election. He also contends that Local 126 has close ties with Mayor Daley through Faul, the union official we mentioned earlier. Consequently, Shanahan argues, the political affiliation with, and support for, Mayor Daley of the three machinists can be deduced from their membership in Local 126.

In his complaint, Shanahan alleged that the pressure put on him to hire the three machinists amounted to politically motivated hiring in violation of the First Amendment and the *Shakman* decree. According to Shanahan, he is not asserting his own "First Amendment/*Shakman* rights," but the rights of "third parties who may have lost jobs or been unable to obtain jobs in Shanahan's former department."

The defendants moved for summary judgment, asserting that they did not know the political affiliations of the three machinists and, therefore, Shanahan could not prove an unlawful scheme to prefer them as Mayor Daley's political supporters. Shanahan countered by stating that his claims rested not on the individuals' political affiliations, but on their membership in Local 126, which supports Mayor Daley's campaigns. Shanahan's complaint, however, made no mention of Local 126, the individuals' connections to Local 126, or Local 126's political affiliations. In his opposition to summary judgment, Shanahan argued that Local 126's support for Mayor Daley is attributable to its members, and thus Local 126's political affiliations are also necessarily those of its members. In a footnote in his surreply brief, Shanahan told the district court that if it "were to determine" that a claim based on Local 126's political affiliations was not encompassed in his complaint, he "would ask leave to amend" to add the phrase "or members of a union which politically supported Mayor Daley."

The district court granted summary judgment in favor of defendants, agreeing that without evidence that the defendants knew of the three machinists' political affiliations, Shanahan could not prove the defendants engaged in a politically motivated scheme to prefer them based on their political affiliations. The district court also rejected Shanahan's offer to amend his complaint, finding it improper, untimely and, in any event, futile.

On appeal, Shanahan takes issue on various grounds with the summary judgment entered against him. He submits that the district court improperly resolved disputed issues of fact relating to the events that led up to his demotion, which was based, he said, on his refusal to participate in an illegal scheme to hire unqualified machinists at the shops. He asserts that the judge gave improper and erroneous weight to testimony that the rejected applicants were "qualified" for the subject positions. He says the trial court confused the distinction between eligibility and competency and misinterpreted the CBA between Local 126 and the City. The court also, says Shanahan, misconstrued the nature of the *Shakman* consent decree and concluded that Shanahan did not have standing. Finally, Shanahan claims the court erred when it ruled that in order for Shanahan to have standing to assert the constitutional rights of third parties—unsuccessful applicants for the mechanics' positions—he would have to show there were applicants who were refused for political reasons.

In a case where a plaintiff asserts his own rights in an attempt to establish a First Amendment claim in an employment context, he must present evidence that his speech (or conduct) was constitutionally protected and that it was a substantial factor in his demotion. *Garrett v. Barnes*, 961 F.2d 629, 632 (7th Cir.1992) *(citing Mt. Healthy City Bd. of Education v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977)). The same standard applies to claims under the *Shakman* decree. *McGuire v. City of Chicago*, 592 F.Supp. 56, 58 (N.D.Ill.1984). The *Shakman* decree enjoined the City from "conditioning, basing or knowingly prejudicing or affecting any term or aspect of governmental employment, with respect to one who is at the time a governmental employee, upon or because of any political reason or factor." *Shakman v. Democratic Org. of Cook County*, 481 F.Supp. 1315, 1358 (N.D.Ill.1979), *vacated, Shakman v. Dunne*, 829 F.2d 1387 (7th Cir.1987), *cert. denied*, 484 U.S. 1065, 108 S.Ct. 1026, 98 L.Ed.2d 991 (1988). Once a plaintiff shows this, the burden shifts to the defendant to show it would have made the same decision notwithstanding the protected conduct. *Garrett*, 961 F.2d at 632.

In this case, Shanahan asserts that his demotion was not a result of his own political affiliations or associations, but instead resulted from his refusal to hire job applicants merely because they were political supporters of Mayor Daley. He does not assert that he was engaging in protected speech or conduct, and therefore he is not really claiming that his First Amendment rights were violated. Instead, Shanahan asserts that the First Amendment rights of potential applicants who were passed over—those who were not supporters of Mayor Daley, and who might have been hired had he not been pressured to hire the three machinists because of their political support for the Mayor—have been violated. According to Shanahan, he is not asserting his own "First Amendment/*Shakman* rights," but the rights of "third parties who may have lost jobs or been unable to obtain jobs in Shanahan's former department."

As a threshold matter, then, Shanahan must demonstrate that he has standing to bring First Amendment claims on behalf of third parties. When a person or entity seeks standing to advance the constitutional rights of others, we ask two questions. *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 623–24 n. 3, 109 S.Ct. 2646, 2651 n. 3, 105 L.Ed.2d 528 (1989). First, the litigant must prove that he has suffered some injury-in-fact adequate to satisfy Article III's case or controversy requirement. *Id.* Second, the litigant must show that prudential considerations permit him to advance the claim. *Id.* In determining whether the litigant has shown the necessary prudential considerations, a court looks to three factors: (1) the relationship between the litigant and the person whose rights are being asserted; (2) the ability of the person to advance his or her own rights; and (3) the impact of the litigation on third-party interests. *Id.*

As to the first inquiry, there can be little question that Shanahan's demotion from director back to his career position as a lieutenant in the CFD is an adequate injury-in-fact to meet the constitutional minimum of Article III standing. The second inquiry—the prudential one—is more difficult. The first factor does not weigh in Shanahan's favor. This is not a case involving an attorney-client relationship, *Caplin & Drysdale, Chartered*, a doctor-patient relationship, *Eisenstadt v. Baird*, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972), or a vendor-vendee relationship, *Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976), where the nature of the relationship is special. In his brief, Shanahan cites these cases as examples where the Supreme Court has found plaintiffs to have standing to assert the constitutional rights of others. Relying on these cases, Shanahan contends that we should find that he, too, has standing to assert the rights of others. However, Shanahan offers no evidence which suggests that he enjoyed any particular relationship with the unsuccessful applicants, let alone evidence that the relationship was one of special consequence which supports a finding of standing. Similarly, the second factor also counsels against our embrace of Shanahan's claim. There is no evidence to suggest that

unsuccessful applicants faced obstacles to bringing their own constitutional claims. The third factor also does not help Shanahan's case. There is no allegation that this litigation will have any impact on third-party interests of unsuccessful applicants. For these reasons, we find that Shanahan lacks standing to advance the constitutional claims of the unsuccessful applicants. He has failed to satisfy the prudential considerations element of the *Caplin & Drysdale* test.

■ Even if we were to find that Shanahan had standing, summary judgment was properly entered against him. In order to show the defendants demoted him because of his refusal to hire the politically favored candidates, Shanahan was required to show that the defendants knew of the political affiliations of the three machinists and gave them preferential consideration or knew of the political affiliations of the unsuccessful applicants which disadvantaged them from consideration for the positions. *See Cusson–Cobb v. O'Lessker,* 953 F.2d 1079, 1081 (7th Cir.1992) (holding that plaintiff needed to show that defendant knew of her political affiliations to prove political affiliation was a motivating factor in her discharge); *Doherty v. City of Chicago,* 75 F.3d 318, 326 (7th Cir.1996) (we affirmed the dismissal of substantive due process and First Amendment claims where the plaintiff made bald conclusory allegations of political bias in a zoning decision and failed to allege that the defendant knew of her nonaffiliation with the Democratic Party or that anyone with the favored political affiliation received zoning certification under similar circumstances). In their affidavits, Broderick and Commissioner Orozco unequivocally denied knowledge of the political affiliations or associations of anyone involved in the suit. Shanahan did not produce any evidence to rebut these affidavits. Therefore, he could not oppose summary judgment dismissing his political affiliation claim. Furthermore, even if membership in Local 126 were itself a political affiliation—a dubious notion at best—the CBA between the City and the union required the City to prefer union members, and the fact remains that all unsuccessful applicants for the positions, in whose shoes Shanahan hopes to stand, were also members of Local 126.

■ As a final matter, Shanahan's attempt to amend his complaint by way of a footnote in his response to defendants' motion for summary judgment was properly denied by the district court. A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment. *See Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir.1984) (complaint may not be amended by brief in opposition to motion to dismiss). We review a district court's denial of a motion to amend the complaint for abuse of discretion. *Kleinhans v. Lisle Savings Profit Sharing Trust,* 810 F.2d 618, 625 (7th Cir.1987). The court clearly did not abuse its discretion. First, the form of the request—a passing reference in a footnote of his response to defendants' motion for summary judgment—was improper. Second, the request was untimely—discovery had been closed for over a year. In any event, the request was meritless and futile. His amended complaint still suffered from the same defects which ultimately caused summary judgment to be entered against him. That is, Shanahan could not get around the fact that the political affiliations of the three machinists were not known by the defendants.

For these reasons, the judgment of the district court in favor of defendants is

AFFIRMED.