**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 07-1084

BARCLAY WHITE SKANSKA, INCORPORATED,

Plaintiff - Appellant,

versus

BATTELLE MEMORIAL INSTITUTE,

Defendant - Appellee.

Appeal from the United States District Court for the District of
Maryland, at Baltimore.    Richard D. Bennett, District Judge.
(1:04-cv-03864-RDB)

Argued:  October 31, 2007         Decided:  January 29, 2008

Before TRAXLER and GREGORY, Circuit Judges, and Jerome B. FRIEDMAN,
United States District Judge for the Eastern District of Virginia,
sitting by designation.

Affirmed in part; reversed and remanded in part by unpublished
opinion.  Judge Gregory wrote the opinion, in which Judge Traxler
and Judge Friedman joined.

**ARGUED:** Allen Tupper Brown, II, Gill, Massachusetts, for Appellant.
Ava Elaine Lias-Booker, MCGUIREWOODS, L.L.P., Baltimore, Maryland;
William Harrison Baxter, II, MCGUIREWOODS, L.L.P., Richmond,
Virginia, for Appellee.  **ON BRIEF:** Andrew Jay Graham, KRAMON &
GRAHAM, Baltimore, Maryland; Edward Seglias, COHEN, SEGLIAS,
PALLAS, GREENHALL & FURMAN, P.C., Philadelphia, Pennsylvania, for
Appellant.

Unpublished opinions are not binding precedent in this circuit.

GREGORY, Circuit Judge:

This case involves whether a plaintiff contractor presented genuine issues of material fact, sufficient to overcome the owner defendant's motion for summary judgment. We hold that it did. Accordingly, we reverse the district court's grant of summary judgment with respect to $300,000 withheld for alleged incomplete work, for the failure to execute the approved change orders, and for general costs; however, we affirm the district court's grant of summary judgment with respect to the disputed change orders, and remand for proceedings consistent with this opinion.


I.

Barclay White Skanska, Inc. ("Barclay White"), and Battelle Memorial Institute ("Battelle") negotiated a construction contract, which provided that Battelle would pay Barclay White a contractor's fee and the cost of work to manage the construction of a technology center. The contract included a "Guaranteed Maximum Price" ("GMP") of $13,350,000.[1] Battelle, however, could request an increase in the scope of the work, which would increase Barclay White's costs,

---

[1]The GMP represented the maximum Barclay White could be paid for all costs and fees. It was calculated as follows:

| | |
|---|---|
| 38 Subcontractor Bid Packages: | $11,719,015 |
| Contingency: | 450,000 |
| General Conditions: | 864,735 |
| Contractor's Fee: | 316,250 |
| GMP (Total): | $13,350,000 |

and in turn raise the GMP.  This process was done through change orders:  Barclay White would submit a request for a change order,[2] Battelle would approve or deny the request, and the GMP would be adjusted accordingly.

During construction, Barclay White submitted several change order requests with regard to the additional work and its costs, which Battelle approved.[3]  However, Battelle did not execute the approved change orders and the GMP never increased.[4]

In Spring 2003, Barclay White submitted its last payment application, valuing the contract at $13,426,444.72.[5]  Conversely, according to Battelle, the company owed Barclay White only $13,224,405.[6]  On May 10, 2004, Battelle responded to Barclay

---

[2]First, Barclay White would submit a "Potential Change Order Notification" ("PCO") describing the new work and estimating the cost.  After the cost had been determined, Barclay White would submit a "Change Order Request" ("COR") for approval by Battelle.

[3]Barclay White alleges that Battelle's own records indicate it approved over a million dollars worth of change order requests. (Appellant's Br. 8, J.A. 1146.)

[4]Battelle paid the change orders as they were submitted. Payment is not at issue in this case.

[5]Barclay White's final payment application calculated:
Total Reimbursable Costs Plus Fee:   $13,426,444.72
Total Retainage:                        -170,230.26
Amount Already Paid by Battelle:     -12,102,951.42
Requested Payment:                   $ 1,153,263.04
(J.A. 1139.)  According to Barclay White, the final payment would have included a "[b]alance to finish including retainage" of $93,785.54.

[6]Conversely, Battelle's calculated:
Total Reimbursable Costs Plus Fee:   $13,524,405

4

White's last payment application with a letter and final installment payment of $387,315, indicating that after being paid that amount, Barclay White would have been paid in full for its work under the contract. (J.A. 80.) Battelle arrived at the final amount by subtracting the installment payments made to Barclay White in the course of construction, as well as an additional $300,000 for incomplete work, from the total contract amount. See supra note 6.

On June 4, 2004, Barclay White replied with a letter stating it did not accept the check as final payment for the project. Barclay White then filed its original complaint in Maryland court, alleging that Battelle had not paid Barclay White for the costs associated with two particular change orders and that Battelle had withheld the balance of the contract by failing to pay Barclay White the entire GMP. The original complaint contained a breach of contract claim for nonpayment of the change orders[7] for $624,870,

---

| Total Withheld: | -300,000 |
|---|---|
| Amount Already Paid by Battelle: | -12,837,090 |
| Payment Owed: | $ 387,315 |

(J.A. 1139.) Thus, there is an approximate $734,139.58 difference between what Battelle calculated it had paid and what Barclay White calculated Battelle had paid. Additionally, there is an approximate $97,960.28 difference between the contract amount calculated by the two parties.

[7]The first change order refers to Barclay White's request for a payment of $320,787 for six PCOs, which became six CORs.

The second change order refers to Barclay White's request for a payment of $304,083 for 48 PCOs, which translated into 46 CORs. Battelle alleges it paid in full with regard to this amount, with the exception of one voided and two disputed PCOs. Battelle paid

a breach of contract claim for $125,595 (the balance between the GMP and the amount paid), an unjust enrichment claim, a quantum meruit claim, and a claim for the violation of the Maryland Prompt Payment Act. Battelle answered, filed a counterclaim, and removed to federal court.[8]

Following discovery, both parties moved for summary judgment. The district court rejected Barclay White's motion and granted Battelle's motion. Barclay White moved for reconsideration of its breach of contract claim, which the court denied. Battelle and Barclay White then stipulated to dismiss Battelle's counterclaim without prejudice. Consequently, the district court dismissed the counterclaim. On the same day, Barclay appealed to this Court, challenging the district court's order and grant of summary judgment, but only with respect to Count I of the Amended Complaint, the breach of contract claim. Thus, the grant of

---

$291,011.

Additionally, in its Amended Complaint, Barclay White argued that it was entitled to payment of a third change order in the amount of $222,006 for what appears to be 37 PCOs converted to 34 CORs.

[8]On May 15, 2005, Barclay White moved to amend its complaint, filing an Amended Complaint with its motion. Battelle argues in its brief that the amendment was untimely, as it was filed outside of the time allotted for amending the complaint by the district court's scheduling order. Battelle opposed the amendment. The district court granted the motion, and the Amended Complaint was filed. However, because the district court ultimately accepted the Amended Complaint, amending the complaint is not an issue in this appeal.

summary judgment on the breach of contract allegation is Barclay White's sole claim before us on appeal.[9]

## II.

We review a grant of summary judgment <u>de novo</u>, "employing the same legal standards applied by the district court." <u>Elliott v. Sara Lee Corp.</u>, 190 F.3d 601, 605 (4th Cir. 1999) (citing <u>Brogan v. Holland</u>, 105 F.3d 158, 161 (4th Cir. 1997)). In evaluating a motion for summary judgment, this Court reviews the evidence in the light most favorable to the nonmoving party, in this case Barclay White. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).

Summary judgment is proper when there is no genuine issue of material fact to warrant a trial. FED. R. CIV. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). Battelle argues that it is entitled to summary judgment because it has already paid Barclay White all the amounts owed under the contract. Barclay White counters that the district court erred by limiting its breach of contract claim and that it raised genuine issues of material fact. We agree.

_____

[9]The breach of contract claim includes damages Barclay White alleges as resulting from delay.

## A. Scope of Claim

The district court began its analysis by limiting the scope of Barclay White's breach of contract claim to three change orders.[10] The court then found that Battelle "correctly notes that this disputed evidence clearly shows that [Barclay White] has been paid the appropriate amounts owed under Change Orders one, two, and three," and that Barclay White "has not presented evidence indicated [sic] that these amounts were not included as part of the $13,224,405 paid by Battelle to Barclay." (J.A. 2388.) As a result, the court concluded that Barclay White did not present sufficient probative evidence to overcome summary judgment on its breach of contract claim.

Barclay White argues that the district court incorrectly narrowed the breach of contract claim to an allegation that Battelle did not pay for the extra work indicated on the three changes orders. Rather Barclay White maintains that it pled a far more general breach of contract claim, growing out of Battelle's failure to pay all amounts due under the contract. We agree.

Notice pleading rests on the principle that the defendant should have "fair notice of what [a] plaintiff's claim is and the

_____

[10]The district court stated that "[a]lthough the precise contours of Plaintiff's breach of contract claim are virtually impossible to identify, this Court treats Count I as a claim based on Battelle's alleged failure to pay $995,164 in connection with the CORs listed in Change Orders one, two, and three." (J.A. 2385.)

8

grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957). Rule 8 of the Federal Rules of Civil Procedure provides that "[p]leadings must be construed so as to do justice." FED. R. CIV. P. 8(d). Rule 8 "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. Twombly, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957) (omission in original)).

The breach of contract claim in the Amended Complaint stated that "[d]uring the course of the Project, Barclay White was directed by Battelle and/or its representatives to perform Extra Work." (J.A. 430, ¶ 55.) However, while Barclay discussed the "Extra Work" it performed in its breach of contract claim, it also included claims that "[p]ursuant to its Contract with Barclay White, Battelle agreed to pay Barclay White for the work, services and materials Barclay White supplied at the Project," that "Barclay White performed all Contract work and Extra Work in a timely, professional and workmanlike manner," and that "[de]spite Barclay White [sic] fulfulling all of its obligations under the Contract and performing all Extra Work as requested by Bartelle in a timely, professional and workmanlike manner, Battelle has failed and/or refused to remit payment to Barclay White in excess of 1,078,465.00." (J.A. 431, ¶¶ 57, 59, 60.) Thus, under a broad

9

pleading rule, Battelle was on notice that the breach of contract claim implicated both "all Contract work and Extra Work." The district court was thereby incorrect in restricting Barclay White's claim to just three change orders. We hold that Barclay White pled a breach of contract claim, encompassing all work under the contract and all extra work. We now turn to whether Barclay White presented genuine issues of material fact sufficient to defeat Battelle's summary judgment motion.

## B. Genuine Issues of Material Fact

In its Reply Brief, Barclay White clearly claims damages for money withheld for incomplete work and for the failure to pay disputed change orders, as well as general and additional costs. Battelle argues that despite Barclay White's knowledge of the $300,000 withheld, the $204,000 in disputed change orders, and the $384,000 in cost overruns, it failed to include those amounts in its eighty-nine paragraph Amended Complaint and cannot assert them before this Court.

## 1. Money Withheld

Battelle created a punch list of deficient work, sought an estimate for the completion of that work, and subtracted that amount from its payment to Barclay White.[11] Barclay White contends that Battelle breached the contract by withholding $300,000 for

---

[11]Barclay White at argument asserted only that it performed most, and not all, of the punch work.

incomplete work. Battelle responds that Barclay White did not sufficiently plead this aspect of its breach of contract claim, and thus, this Court cannot hear it. We disagree. Barclay White's claim for all costs under the contract includes the $300,000 Battelle withheld. Moreover, the amount withheld constitutes a genuine issue of material fact appropriate for a factfinder.

With its May 10, 2004 payment closeout letter and check for $387,315, Battelle included a May 4, 2004, letter from Himes Associates, Ltd. ("Himes"), the owner representation firm employed by Battelle. In a section titled "Incomplete/Deficient Work," the Himes letter explained:

> BWS [Barclay White Skanska] has never completed the interior or exterior punch lists that were issued during the course of the project. Battelle had the design team consolidate the punch lists into one document that addressed only the significant issues with the operation of the building.
>
> This punch list was priced by another contracting firm who determined that repairs to the building would cost $300,000. This figure was used to establish the uncorrected/incomplete analysis of the project and contract. Certainly BWS has the option to complete this list but since it was issued in December 2003, no attempt to correct the work has been undertaken.

(J.A. 1131.) Thus, based on Barclay White's failure to complete the punch list and an outside estimate of the cost of the work, Battelle withheld $300,000 for incomplete work.

Battelle argues that in failing to include it in the Amended Complaint, Barclay White did not properly plead this issue, thereby barring Barclay White from recovering the withheld amount.

11

Battelle is partially right: nowhere in the Amended Complaint's factual background or section on the breach of contract does Barclay White challenge any funds withheld for a failure to complete work. Yet before this Court, Barclay White claims that the $300,000 represents a failure to honor the contract and can be inferred to be included in parts of the Amended Complaint dealing with the breach. We agree.

As we held in the previous section, Barclay White alleged a claim for all costs owed under the contract. According to Maryland law, the existence of a binding contract requires "an offer by one party and an unconditional acceptance of that precise offer by the other." Lemlich v. Bd. of Trs., 385 A.2d 1185, 1189 (Md. 1978). In Taylor v. NationsBank, N.A., 776 A.2d 645, 651 (Md. 2001) (citations omitted), the Maryland Court of Appeals held that

> To prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation. It is not necessary that the plaintiff prove damages resulting from the breach, for it is well settled that where a breach of contract occurs, one may recover nominal damages even though he has failed to prove actual damages.

Intentionally withholding any costs that would otherwise be owed constitutes a potential breach. Thus, because Barclay White included a general claim for all costs under the contract, it was not necessary for Barclay White to specifically plead the $300,000 Battelle withheld to recover damages for that amount.

12

Although employees of Barclay White indicated that the company was aware of certain unfinished work (see J.A. 1231-34), for Battelle to withhold $300,000 when retainage had already been calculated, providing only a quote from "another contract firm" as support,[12] raises a genuine issue of material fact. In moving for summary judgment, Battelle attached several documents to buttress its position, including depositions, letters from the outside contractor, an appraisal report of the incomplete work, and Himes' accounting documents. While this evidence supports Battelle's argument that the alleged unfinished work would cost $300,000 to complete, it may not relieve Battelle of its contractual obligation to pay Barclay White.

That said, a claim for $300,000 is somewhat disingenuous, as Barclay White in its own calculations allowed for a $170,230.26 deduction in retainage, as calculated in its final payment application. See supra note 5. Thus, the claim may be more rightfully for $129,769.74, the difference between Barclay White's own calculation of retainage and the amount actually withheld by Battelle. Though we note this discrepancy, we leave this question to the trier of fact.

---

[12]Peter Coyle of Barclay White testified at his deposition that he did not receive a detailed breakdown of the outside estimate until the parties attempted settlement negotiations. (J.A. 1240.)

13

## 2. Change Orders

Barclay White presents two issues related to change orders: Battelle's failure to execute the approved change orders and its failure to pay the disputed change orders.  We address these issues in turn.

In its Amended Complaint, Barclay White alleges that

> Pursuant to the Contract, Barclay White is entitled to written change orders and a corresponding increase in the Contract price for work it performed at the direction and request of Battelle and/or Himes that was in addition to, beyond or outside the scope of the original terms of the Contract ("Extra Work").

(J.A. 421, ¶ 6.)  In moving for summary judgment, Battelle attached several pages of deposition testimony to its motion for summary judgment in which Barclay White's expert declares that he could not contest Battelle's expert's testimony that the disputed change orders were paid.  With its motion opposing summary judgment, Barclay White filed several exhibits, including a letter presenting the GMP, copies of potential change orders, affidavits, and deposition testimony.  However, Barclay White included no evidence directly contradicting Battelle's evidence that the change orders had, in fact, already been paid.[13]  Moreover, at oral argument

---

[13]With respect to change orders one and two, it is undisputed by the evidence presented in the exhibits that those amounts were paid.  There is, however, some confusion with regard to the third change order.  Barclay White originally presented the third change order as comprised of 37 PCOs, but later one of Barclay White's witnesses indicated that the third change order consisted of 63 CORs.  Battelle's witness testified that the original 37 PCOs were paid.  Although Barclay White raised this issue in opposing

14

Barclay White clarified that the issue was not whether the change orders were paid, but rather whether they were executed, the result of which under the contract would have been an increase of the GMP. Both Barclay White and Battelle calculated that the total contract cost exceeded the $13,350,000 GMP.[14]  If the total contract cost exceeded the GMP, the payment but failure to execute the change orders would adversely affect Barclay White because the payments would go toward the GMP without the GMP's being increased accordingly, thereby cutting into the amount Barclay White could receive for costs and other expenses.  Thus, regardless of whether the change orders were paid, Barclay White may have a claim for the difference between the actual contract value, as determined by a jury, and the GMP because the paid change orders were never executed.[15]

In addition to its claims related to the failure to execute the approved, paid change orders, Barclay White also argues that it

---

Battelle's motion for summary judgment, this inconsistency is not an issue at this point in the proceedings, as Barclay White concedes that the issue surrounding the approved change orders is not payment but execution.

[14]Before the $300,000 deduction, Battelle valued the contract at $13,524,405.  Barclay White valued it at $13,426,444.72.  (J.A. 1139.)

[15]However, according to Barclay White's calculations, if Battelle is entitled to the $170,230.26 of retainage, the total owed to Barclay White is $13,256,214.46, an amount under the GMP, potentially making the failure to execute the change orders moot, if Battelle is allowed to keep the retainage.

15

is entitled to $204,454 in disputed change orders. The disputed change orders arose from eleven potential change order notifications that Himes found were not billable under the contract. (J.A. 1137.) Battelle again counters that the issue was not properly pled, as Barclay White specifically alleges damages for three change orders in its Amended Complaint, but is silent with respect to the disputed change orders. However, unlike the $300,000, which Battelle deducted from approved costs and fees, liberal notice pleading cannot save Barclay White's claim for the disputed change orders.

As we previously stated, notice pleading is designed to provide defendants with fair notice of the plaintiffs' claims and the grounds upon which those claims rest. <u>Conley</u>, 355 U.S. at 47. Thus, Barclay White's complaint cannot be construed so liberally so as to deprive Battelle of notice. Additionally, despite the liberal pleading rules outlined by the Supreme Court, plaintiffs may not raise new claims without amending their complaints after discovery has begun. In <u>Gilmour v. Gates, McDonald & Co.</u>, 382 F.3d 1312, 1315 (11th Cir. 2004) (citing <u>Shanahan v. City of Chicago</u>, 82 F.3d 776, 781 (7th Cir. 1996)), the Eleventh Circuit held that

> Efficiency and judicial economy require that the liberal pleading standards under <u>Swierkiewicz</u> and Rule 8(a) are inapplicable after discovery has commenced. At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a). A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.

16

Other circuits have taken similar positions.  See Tucker v. Union of Needletrades, Indus., & Textile Employees, 407 F.3d 784, 788 (6th Cir. 2005); Shanahan, 82 F.3d at 781 (citing Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984)) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment."); Fisher v. Metro. Life Ins. Co., 895 F.2d 1073, 1078 (5th Cir. 1990) ("As the district court correctly noted, this claim was not raised in Fisher's second amended complaint but, rather, was raised in his response to the defendants' motions for summary judgment and, as such, was not properly before the court.").[16]  Barclay White is, therefore, unable to raise new claims after discovery has commenced without further amending its complaint.

In a preceding section, we held that Barclay White's claim for all costs owed under the contract encompassed a claim for the money withheld by Battelle due to unfinished work.  With regard to that issue, Battelle ignored the terms of the contract and the retainage already built into the agreement, conducted an outside appraisal, and deducted monies from the contract amount that Barclay White otherwise would have been owed.  In contrast, the $204,454 at issue

---

[16]Additionally, district courts in this circuit have adopted Gilmour.  See Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp., 455 F. Supp. 2d 399, 436 (D. Md. 2006); Miller v. Jack, 2007 U.S. Dist. LEXIS 50685 at *12 (N.D. W.Va. July 12, 2007) (citations omitted) ("Significantly, a plaintiff may not amend his complaint through arguments in his brief in opposition to summary judgment.").

here arises from <u>disputed</u> change orders, that is change orders that for one reason or another were not approved or did not conform (at least from Battelle's perspective) to the conditions of the contract. Put differently, unlike the withheld money, because of the disputed nature of these change orders, Battelle did not fail to pay Barclay White money to which it was otherwise clearly entitled. Thus, the disputed change orders do not fall within the scope of the "all Contract work and Extra Work" pled in Barclay White's Amended Complaint. In outlining the specific parameters of its Amended Complaint, Barclay White discusses "Extra Work" in terms of the approved change orders, and Battelle conducted meticulous discovery with respect to those change orders. However, Barclay White's failure to include the disputed change orders in its Amended Complaint deprived Battelle of the opportunity to have discovery on this issue.

Although in its Reply Brief Barclay White tries to reframe the disputed change orders as additional money unfairly withheld by Battelle, those orders were not approved. Thus, under the terms of the contract, Barclay White was never entitled to payment. Consequently, while the broad pleading rules can save the issue of the money withheld for incomplete work, it cannot similarly save the disputed change orders. Because Barclay White's Amended Complaint did not put Battelle on sufficient notice that, in addition to the three change orders enumerated in the complaint,

18

the disputed change orders were also at issue, we hold that it failed to plead this issue adequately and affirm the district court's grant of summary judgment on this issue.

### 3. General Costs

Lastly, Barclay White argues that it is entitled to $384,383 in General Costs beyond Battelle's calculations. Battelle argues that the costs were capped at $834,854. As with both preceding issues, Battelle argues that Barclay White failed to include general costs in its Amended Complaint and, therefore, cannot recover. Again, we disagree.

A May 11, 2001, bid form clearly states that the general conditions were not to exceed $834,854, thereby expressly capping what Barclay White could recover for costs, but containing no GMP. (J.A. 535.) The governing contract, however, includes the $13,350,000 GMP, but does not include a cap on costs. Like the $300,000 withheld, the General Costs issue falls within the broad umbrella of Barclay White's claim for "all Contract work." Whether the cap articulated in the bid form, but not included on the face of the contract, should apply is a matter of contractual interpretation suited for trial.

### C. Notice Requirement

In granting Battelle's motion for summary judgment, the district court also found that Barclay White failed to comply with the notice provision of the contract. Citing the Maryland Court of

Special Appeals case <u>J. Ronald Dashiell & Sons, Inc. v. County Commissioners of Caroline County</u>, No. 677 (Md. Ct. Spec. App. Feb. 22, 1999), <u>affirmed in part, reversed in part by</u> <u>County Commissioners of Caroline County v. J. Ronald Dashiell & Sons, Inc.</u>, 747 A.2d 600 (Md. 2000), the district court found that Barclay White's written statement that it was considering filing a claim for delay inadequate notice under the contract. In <u>Dashiell</u>, the court granted summary judgment on a liquidated damages claim because the contractor failed to comply with the contract's notification requirement. <u>Id.</u> at *9. In its brief to this court, Battelle asserts that in addition to any "delay damages," Barclay White also waived, <u>inter alia</u>, claims for the $300,000 withheld, the disputed change orders, and the general conditions costs under <u>Dashiell</u>. (Appellee's Br. 37.) We now address the contract's notice requirement.

Section 4.3 of the Contract governs notice. That section reads:

4.3 CLAIMS AND DISPUTES

4.3.1 Definition.
A Claim is a demand or assertion by one of the parties seeking, as a matter of right, adjustment or interpretation of Contract terms, payment of money, extension of time or other relief with respect to the terms of the Contract. The term "Claim" also includes other disputes between the Owner and the Contractor arising out of or related to the Contract. Claims must be initiated by written notice. The responsibility to substantiate Claims shall rest with the party making the Claim.

20

4.3.2 Time Limit on Claims.
Claims by either party must be initiated within 21 days after the occurrence of the event giving rise to such Claim or within 21 days after the claimant first recognizes the condition giving rise to the Claim, whichever is later. Claims must be initiated by written notice to the Architect and the other party.

(J.A. 491, §§ 4.3.1, 4.3.2.) As in the present case, in Dashiell, the contract required written notice of the claim within 21 days. However, the contractor submitted a letter on December 16, 1996, indicating the intent to recover unspecified delay damages for events occurring after June 20, 1996. Dashiell, No. 677 at *9. The Dashiell court held that the notice was untimely.[17] Id. Conversely, Barclay White provided Battelle with timely written notice.

In early 2003, Barclay White sent its last payment application to Battelle, indicating Barclay White's position that Battelle owed $13,426,444.72 for the entirety of the contract. Barclay White received Battelle's check and final payment letter on May 21, 2004. (J.A. 582.) Barclay White responded on June 4, 2004, fourteen days later, rejecting the check and indicating Barclay White was of the

---

[17]The Dashiell court also noted in a footnote that "[i]n addition to being untimely, the December 16, 1996, 'Notice of Claim' did not provide 'an estimate of cost and of probable effect of delay on progress of the work' pursuant to the plain language of section 4.3.8.1." Dashiell, No. 677 at *9, n. 2. Section 4.3.7.1 of the Barclay White's contract with Battelle contains a similar provision. However, that section deals only with delay damages, whereas the issues currently before this Court are money withheld for defective work, the disputed PCOs, and the general conditions costs. Section 4.3.7.1 does not, therefore, apply.

21

position that Battelle owed more money under the contract. (J.A. 584-87.) As the final payment application and subsequent letter were sufficient to fulfill the written notice requirement, the district court was incorrect in finding Barclay White had waived its claim.

IV.

The district court erred in limiting Barclay White's breach of contract claim. Thus, we hold that Barclay White pled a breach of contract claim for all costs owed under the contract. With the scope of the claim no longer so severely limited, we hold that Barclay White presented genuine issues of material fact in reference to the $300,000 withheld for alleged incomplete work, the failure to execute the approved change orders, and general costs. We, therefore, reverse the district court's grant of summary judgment on these issues. However, because Barclay White failed to plead the disputed change orders adequately, we affirm the district court's grant of summary judgment on this issue. Thus, we remand this case for a trial on the merits pursuant to this opinion.

AFFIRMED IN PART;
REVERSED AND REMANDED IN PART