Mario Petruzzo; Jeffrey BUSH; and Kimberly Bush, Plaintiffs,

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, d/b/a National Union Fire Insurance Company, a member of American International Group, Inc. (AIG); HealthExtras, Inc.; Catamaran Health Solutions, LLC f/k/a Catalyst Health Solutions, Inc.; Alliant Insurance Services, Inc.; Alliant Services Houston, Inc.; Virginia Surety Company, Inc.; and HealthExtras, LLC, Defendants.

No. 5:12–CV–113–FL.

United States District Court, E.D. North Carolina.

Signed May 22, 2015.

Edward H. Zebersky, Zebersky Payne LLP, Fort Lauderdale, FL, Joseph H. Aughtman, Aughtman Law Firm, LLC, Montgomery, AL, Kenneth Jay Grunfeld, Golomb & Honik, P.C., Philadelphia, PA, Matthew L. Clark, Kayser Layne & Clark, PLLC, Point Pleasant, WV, Aaron C. Hemmings, Hemmings & Stevens, Raleigh, NC, for Plaintiffs.

Christopher J. Blake, Leslie Lane Mize, Nelson Mullins Riley & Scarborough, LLP, Raleigh, NC, Matthew J. Splitek, Quarles & Brady LLP, Madison, WI, Patrick J. Murphy, Quarles & Brady LLP, Milwaukee, WI, Charles E. Raynal, IV, Matthew Hilton Mall, Melanie Black Dubis, Parker, Poe, Adams & Bernstein, LLP, Raleigh, NC, Heather Bell Adams, Matthew Patrick McGuire, Richard Anthony McAvoy, Alston & Bird LLP, Durham, NC, Christopher M. Assise, Theodore R. Scarborough, Sidley Austin LLP, Chicago, IL, Phoebe Norton Coddington, Winston & Strawn LLP, Charlotte, NC, Stacie Corbett Knight, Hunton & Williams, L.L.P., Charlotte, NC, for Defendants.

HealthExtras, LLC, pro se.

## ORDER

LOUISE W. FLANAGAN, District Judge.

This matter comes before the court on motion of defendant Virginia Surety Company, Inc. ("Virginia Surety") to dismiss the complaint for lack of standing and failure to state a claim upon which relief can be granted, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (DE 146). For reasons stated herein, defendant's motion is granted.

## STATEMENT OF THE CASE

On March 6, 2012, plaintiff Mario Petruzzo ("Petruzzo"), a resident of North Carolina, filed complaint on behalf of himself and all similarly situated North Carolina residents concerning allegedly fraudulent insurance practices. Claims were asserted against three categories of defendants: 1) alleged scheme architects; 2) insurance brokers; and 3) underwriters. The matter was styled as a putative class action. Plaintiff invoked this court's subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), alleging a class of more than 100 members with an aggregate amount in controversy in excess of $5,000,000.00.

Plaintiff alleged that the policies issued pursuant to the disputed insurance program were illegal and void *ab initio*, where they failed to comply with N.C. Gen.Stat. §§ 58–51–75 and 58–51–95. Plaintiff sought to recover compensatory and punitive damages under the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen.Stat. § 75–1.1 et *seq.*, as well as under common law claims for breach of the duty of good faith and fair dealing, unjust enrichment, and civil conspiracy.

In August 2013, the court took up and considered three separate motions to dismiss under Rule 12(b)(6), all of which were denied.[1] Later, plaintiff made a motion to amend his complaint, which in large part was allowed. In the similarly styled amended complaint, filed September 12, 2014, (DE 123), which is the operative pleading in this case, plaintiff's substantive claims remain the same, but plaintiff, for the first time, alleged the existence of a second insurance policy providing additional benefits under the disputed insurance program. Plaintiff was permitted to add as defendant the underwriter of that policy, Virginia Surety, movant herein, a corporation organized under the laws of Illinois with its principal place of business in that state. Plaintiff also was permitted to add as defendant another alleged scheme architect, HealthExtras, LLC ("New HealthExtras"), a limited liability company organized and existing under the laws of the state of Delaware.[2] Jeffrey Bush and Kimberly Bush (collectively the "Bush Plaintiffs" or the "Bushes"), residents of North Carolina from and after July 21, 2005, also were added as plaintiffs. The Bushes were living in Pennsylvania at the time of their enrollment in the insurance program.[3]

In response to the amended complaint, on November 14, 2014, defendant Virginia Surety filed the instant motion to dismiss, raising new argument that plaintiffs lack standing to sue, grounded on N.C. Gen. Stat. § 58–50–15(b), which provides in part that "[a] policy delivered or issued for delivery to any person in this State in violation of Articles 50 through 55 of [Chapter 58] shall be held valid but shall be construed as provided in Articles 50 through 55 of this Chapter." [4]

---

1. Each motion was filed by a discrete category of defendants on June 1, 2013. The alleged scheme architects, defendants HealthExtras, Inc. and Catalyst Health Solutions, LLC, as well as then-defendants HealthExtras Insurance Agency, Inc., and HealthExtras Benefits Administrators, Inc., joined in one motion. (DE 35). Broker defendants, Alliant Insurance Services, Inc., Alliant Services Houston, Inc., and then-defendant Alliant Insurance Services Houston, Inc., joined in another. (DE 37). Finally, the single underwriter defendant at the time, National Union Fire Insurance Company, filed its own motion. (DE 39). Arguments made by the underwriter defendant relating to the validity of the disputed insurance policies were relied on also by the alleged scheme architect and broker defendants. On June 19, 2014, plaintiff moved to dismiss HealthExtras Insurance Agency, Inc., (DE 104), and HealthExtras Benefits Administrators, Inc. (DE 105). On

that same day, plaintiff also moved to dismiss Alliant Insurance Services Houston, Inc. (DE 106). These motions were allowed by order entered June 24, 2014.

2. On January 9, 2015, New HealthExtras sought bankruptcy protection in the United States Bankruptcy Court for the District of Maryland. *In re HealthExtras, LLC*, No. 15–10368 (Bankr.D.Md. Jan. 9, 2015); (*see also* DE 156).

3. The court did not, however, for reasons stated in its September 8, 2014, order, permit the Bush plaintiffs to seek to recover for actions occurring prior to July 21, 2005, during which time they remained residents of Pennsylvania.

4. Articles 1 through 64 of Chapter 58 of the North Carolina General Statutes are also known as the Insurance Law. N.C. Gen.Stat.

Defendant Virginia Surety seeks the court to examine the disputed insurance program as a whole, and evaluate plaintiffs' standing to sue any defendant under plaintiffs' theory that the policies issued pursuant to the insurance program are void *ab initio* and that plaintiffs were damaged by paying the premiums or fees for such policies.

## BACKGROUND

### A. Background of the Alleged Scheme

As derived from the amended complaint, in 1997, David Blair, then Chief Executive Officer of defendant HealthExtras, Inc. ("HealthExtras"), along with others,[5] conceived of the alleged disability insurance scheme at issue, with the intent of defrauding consumers, avoiding state insurance regulations, and gaining an unfair and illegal advantage in the disability insurance market. (Am. Compl., DE 123, ¶¶ 6–7, 84, 86, 95). Defendant HealthExtras developed a program whereby enrollees would pay a single payment or premium for two types of benefits: Accidental Permanent and Total Disability benefit ("Disability Benefit"), and Emergency Accident and Sickness Medical Expense benefit ("Health Benefit").[6] (*See id.* ¶¶ 84–88). The Disability Benefit and Health Benefit afforded enrollees benefits accruing from two insurance policies, issued to a trust, which was denominated as the policy holder for both policies. (*Id.* ¶¶ 84, 89, 186–88). The trust held the policies for the benefit of the group of enrollees, where the only unifying characteristic of the group members was a desire to enroll in the program offered by defendant HealthExtras. (*See id.* ¶ 173).

To market its plan, defendant HealthExtras established marketing partnerships with the nation's largest VISA, Master-

---

§ 58-1-1. Article 50 concerns "General Accident and Health Insurance Regulations." N.C. Gen.Stat. § 58-50-1 et *seq.* Article 51 addresses the "Nature of Policies," with regard specifically to policies of insurance against loss of damage from sickness, bodily injury, or death. N.C. Gen.Stat. § 58-51-1 et *seq,* Article 52 concerns "Joint Action to Insure Elderly." N.C. Gen.Stat. § 58-52-1 et *seq.* Article 53 provides for "Group Health Insurance Continuation and Conversion Privileges." N.C. Gen.Stat. § 58-53-1 et *seq.* Article 54 addresses "Medicare Supplement Insurance Minimum Standards." N.C. Gen. Stat. § 58-54-1 et *seq.* Finally, Article 55 concerns "Long Term Care Insurance." N.C. Gen.Stat. § 58-55-1 et *seq.*

**5.** Over time, defendant HealthExtras, Inc. has undergone several changes in its corporate identity. In 2008, it changed its name to Catalyst Health Solutions, Inc. ("Catalyst") (*Id.* ¶ 7). Thereafter, in July 2012, Catalyst Health Solutions, Inc. was sold to SXC Health Solutions, creating defendant Catamaran Health Solutions, LLC, ("Catamaran"). (*Id.*). Despite the name changes, the alleged scheme continued under the trade name "HealthExtras." On August 1, 2012, the insurance policies were sold to defendant HealthExtras,

LLC, a legally distinct limited liability company also operating under the trade name HealthExtras. (*Id.* ¶ 8). Each of these defendants is alleged to have undertaken the same course of conduct. Thus, throughout the order, the court refers to all defendants alleged as architects of the scheme as defendant "HealthExtras."

**6.** Although described herein as the Disability Benefit and Health Benefit, the amended complaint suggests plaintiffs paid a single premium for coverage under two insurance policies. The Disability Benefit was issued to plaintiffs under policy number SRG9540519. (Am. Compl. ¶ 73). The Health Benefit was issued to plaintiffs under policy number HTP000137. (*Id.* ¶ 89). The Disability Benefit was valued at $1,000,000.00. (*Id.* ¶ 84). The Health Benefit initially was valued at $2,500.00, and was intended to cover "accident or sickness while away from home." (*Id.* ¶ 2). Sometime after 2001, that value increased to $5,000.00, after required notice to the insureds. (*Id.* ¶ 89). Enrollment in both programs was required, as the Health Benefit was "not optional." (*Id.*).

Card, and American Express issuing banks, as well as other entities supplying "branded credit cards," such as Sears and Conoco Phillips. (*Id.* ¶ 88). Defendant HealthExtras used these partnerships to send to all cardholders flyers bearing the likeness of late-Superman actor, Christopher Reeve, and applications for enrollment into the insurance program. (*Id.*).

### B. The Alleged Scheme in Operation

As detailed in the amended complaint, defendant HealthExtras entered into contracts with the underwriters, defendants National Union Fire Insurance Company ("National Union") and Virginia Surety, licensed insurance carriers, who applied to the insurance department of the state or states in which they were licensed to do business for approval of a blanket policy, gained approval for such policy, and subsequently underwrote the policy, knowing that these policies did not and could not comply with the law. (*Id.* ¶¶ 88, 95). In order to obtain approval for such policies, these underwriters misrepresented to state insurance regulators that the policies would be issued for the benefit of a valid blanket group, as defined under state law. (*Id.* ¶ 88). However, plaintiffs allege that in some instances the underwriters failed to apply for approval at all. (*Id.*). The alleged complicity of these underwriters was critical to the success of the scheme, because defendant HealthExtras is not a licensed insurance company or licensed insurance underwriter. (*Id.* ¶ 105).

Defendant HealthExtras sold the policies to insurance "trusts," which defendant HealthExtras allegedly controls, and allowed individuals seeking benefits under the Disability Benefit and Health Benefit to enroll in the program as "members" of the "group" for whose benefit the trust held the policies. (*Id.* ¶¶ 107, 174). Thus, the "trust" serves as policy holder, while the individuals, such as plaintiffs, are "members" or "certificate holders" of policies issued directly to the trust. (*Id.* ¶¶ 107, 186–88). In exchange for their enrollment in the Disability Benefit and Health Benefit, all "members" or "certificate holders" paid their premiums, known as "membership fees" or "program fees," directly to defendant HealthExtras. (*Id.* ¶ 105). They did not pay these fees directly to the group, as allegedly is typical of blanket group insurance policies. (*Id.* ¶ 91).

### C. Alleged Involvement of Underwriter and Broker Defendants

The insurance program became effective on January 1, 2000. (*See id.* ¶¶ 104–107).[7] At that time, the Disability Benefit was underwritten by Federal Insurance Company, while the Health Benefit was underwritten by Fidelity Security Life Insurance Company. (*Id.* ¶¶ 38–39).

At a time uncertain in 2001, defendant Virginia Surety became underwriter for the Health Benefit offered to consumers in North Carolina. (*Id.* ¶¶ 39, 89). On January 1, 2005, defendant National Union replaced Federal Insurance Company as underwriter of the Disability Benefit in North Carolina. (*Id.* ¶¶ 43, 157). As early as 2004, a corporate predecessor of the brokers, defendants Alliant Insurance Services, Inc. and Alliant Services Houston, Inc. (collectively sometimes the "Alliant defendants" or "Alliant") was serving as

---

**7.** Plaintiff alleges defendant HealthExtras has collected premiums for the insurance program since January 1, 2000. (Am. Compl. ¶ 107). However, plaintiff alleges he first received marketing materials regarding the in-

surance program in 1998. (*Id.* ¶ 31). It is unclear whether any insurance program existed prior to January 1, 2000. Resolution of this discrepancy is not material to the resolution of defendant Virginia Surety's motion.

broker for the insurance product provided by the insurance program. (*Id.* ¶¶ 43–44, 47).[8]

Plaintiffs allege the underwriters, defendants Virginia Surety and National Union, as well as the broker, defendant Alliant, participated in the scheme in name only, allowing defendant HealthExtras to use their names to solicit customers in North Carolina. (*Id.* ¶¶ 137–38, 141–43, 14849). In exchange for their participation, defendant HealthExtras distributed a nominal amount of the program fees it collected to the underwriters and broker. (*Id.* ¶¶ 105–07, 126, 139, 141, 148).[9] Defendant HealthExtras retained a majority of the fees earned from the insurance program for itself. (*Id.* ¶ 105).

D. Alleged Victimization of Plaintiffs

While not material to the resolution of defendant Virginia Surety's motion, the timing of some events associated with plaintiff Petruzzo is somewhat confusing. He first received marketing materials from defendant HealthExtras in 1998, which were forwarded to him in mailings from Capital One, his credit card issuer. (*Id.* ¶ 31). On February 22, 2000, defendant HealthExtras accepted plaintiff Petruzzo's enrollment into the insurance program (*Id.* ¶¶ 35, 37, 40). The "program fee" or "membership fee" at that time was advertised to be $9.25 per month. (Id.¶¶ 37, 40, 52). However, defendant HealthExtras began debiting plaintiff Petruzzo's credit card account for an annual premium, a

lesser amount of $95.00, or $7.92 per month, on January 29, 2001. (*See id.* ¶ 42). Over the course of Plaintiff Petruzzo's enrollment in the scheme, the fee was charged to his credit card on either a monthly or yearly basis. (*Id.* ¶¶ 166–70).

On October 27, 2004, plaintiff Petruzzo received a letter signed by an employee of JLT Services Corporation, now known as defendant Alliant Services Houston, Inc. ("Alliant Services Houston"), concerning changes in the Disability Benefit only. Specifically, the letter stated that on January 1, 2005, defendant National Union would begin underwriting the insurance program's Disability Benefit, and the definition of "Accidental Permanent Disability" would be become more restrictive. (*See id.* ¶¶ 43–44). Defendant Virginia Surety remained underwriter for the Health Benefit. (*See id.* ¶ 89). The October 27, 2014, correspondence was the first time plaintiff Petruzzo learned he was not the policy holder, but that the policies were held by a trust, known as "AIG Group Insurance Trust, for the Account of HealthExtras." (*Id.* ¶ 44).

In 2005, defendant HealthExtras unilaterally increased plaintiff Petruzzo's premium paid for enrollment in the insurance program from $95.00 per year to $131.00 per year, corresponding to payments of approximately $10.92 per month. (*Id.* ¶ 45). This increase was made without obtaining the required pre-approval from the North Carolina Department of Insurance. (*Id.*). In 2009, defendant Heal-

---

**8.** While the complaint is vague about Alliant's role as broker for the policies, the allegations generally suggest that the Alliant defendants, acting as broker, were engaging directly with the policy holder, i.e., the trust, which plaintiffs allege was controlled by defendant HealthExtras. (Am. Compl. ¶¶ 170, 192).

**9.** Although plaintiff alleges the Alliant defendants "accept[ed] ... sums of money from

North Carolina residents," (Am. Compl. ¶ 169), it does not appear the Alliant defendants accepted monies *directly* from North Carolina residents. Rather, the complaint suggests the Alliant defendants accepted monies from North Carolina residents only by operation of their acceptance of payment for brokering the policies at issue in the insurance program. (*See id.* ¶ 192).

thExtras again increased his premium to $167.00 per year, corresponding to monthly payments in the amount of approximately $13.92. (*Id.* ¶ 46). This increase also occurred without the approval of the North Carolina Commissioner of Insurance ("Commissioner"). (*Id.*).

On January 5, 2010, at plaintiff Petruzzo's request, defendant HealthExtras forwarded him "program materials for the [insurance program], which reflect[ed] [his] benefits as of January 5, 2010," signed by Rob Schanen, Executive Vice President of broker defendant Alliant Services Houston. (*Id.* ¶¶ 47, 50 & Ex. A). The description of coverage enclosed with the letter referred to a number of governing documents for both the Disability Benefit and Health Benefit, which plaintiff Petruzzo had not and has not received from defendants. (*Id.* ¶¶ 49–52). In addition, the program materials indicated that the policies issued pursuant to the insurance program contained contradictory terms and restrictive exclusions, which plaintiff alleges are an intentional effort to render both the Disability Benefit and Health Benefit worthless or virtually worthless to the purchaser. (*Id.* ¶ 51).

The allegations underlying the Bushes' claims are similar to those supporting plaintiff Petruzzo's. After receiving marketing materials from defendant HealthExtras in 1998, the Bush plaintiffs enrolled in the insurance program, effective February 1, 1999, while residents of Pennsylvania.[10] (*Id.* ¶¶ 65–66). They moved to North Carolina from Pennsylvania on July 21, 2005. (*Id.* ¶ 66). The Bush plaintiffs' membership fee also was increased in 2009, without prior approval of the Commissioner. (*Id.* ¶ 69).[11] In response to a written request, defendants HealthExtras and Alliant Services Houston forwarded the same program materials to the Bush plaintiffs on October 11, 2013. (*See id.* ¶¶ 70–74). The Bush plaintiffs have never received a copy of the insurance program's governing documents, as described in those program materials, and the summary of terms in the program materials contains restrictive exclusions and contradictory terms, which the Bush plaintiffs allege are an intentional effort to renders the Disability Benefit and Health Benefit virtually worthless to purchasers. (*Id.* ¶ 74). Plaintiffs allegedly were damaged by being charged premiums for enrollment in the insurance program. (*Id.* ¶ 193).

Plaintiffs seek to represent a class consisting of "[a]ll individual residents of the State of North Carolina who paid sums of money for inclusion in the [insurance program] from January 1, 2000 through the pendency of this action." (Am. Compl. ¶ 156). However, excluded from the proposed class are those individuals who have "[a]ctual identifiable claims for disability

---

**10.** The timing of some events pleaded as associated with the Bush plaintiffs also is somewhat confusing. It is unclear how defendant HealthExtras collected premiums effective February 1, 1999, where plaintiff alleges defendant HealthExtras began collecting premiums effective January 1, 2000. *(See* Am. Compl. ¶ 107). Resolution of this discrepancy also is not material to the court's address of defendant Virginia Surety's motion.

**11.** The complaint also suggests the Bush plaintiffs' premium was increased in 2005. At the time of enrollment plaintiff Jeffrey Bush's monthly fee was $9.95 per month, while plaintiff Kimberly Bush's monthly fee was $7.95. (Am. Compl. ¶ 67). At the time of the 2009 increase plaintiff Jeffery Bush's monthly fee increased from $12.95 to $15.95. Plaintiff Kimberly Bush's fee increased from $10.95 per month to $13.95. (*Id.* ¶ 69). Although plaintiff does not specifically allege the Bush plaintiffs' membership fees were increased in 2005, it appears their rates also were raised by $3.00 in 2005. (*Id.* ¶ 96). Resolution of this factual discrepancy is not material to disposition of the instant motion.

benefits [accruing from the insurance program] that have already arisen[, and] that may be payable under the terms of said disability insurance policies," among others. (*Id.* ¶ 159).

## COURT'S DISCUSSION

### A. Standard of Review

#### 1. Federal Rule of Civil Procedure 12(b)(1)

While asserting bases for dismissal premised upon Federal Rules of Civil Procedure 9(b) and 12(b)(6), the thrust of defendant Virginia Surety's argument devolves around standing and that properly is considered under Federal Rule of Civil Procedure 12(b)(1), as this defendant also notes. *CGM, LLC v. BellSouth Telecomm., Inc.,* 664 F.3d 46, 51–52 (4th Cir. 2011). A Rule 12(b)(1) motion challenges the court's subject matter jurisdiction, and the plaintiff bears the burden of showing that federal jurisdiction is appropriate when challenged by the defendant. *McNutt v. Gen. Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir.1982). Such a motion may either 1) assert the complaint fails to state facts upon which subject matter jurisdiction may be based, or 2) attack the existence of subject matter jurisdiction in fact, apart from the complaint. *Adams,* 697 F.2d at 1219.

Under the former assertion, the moving party contends that the complaint "simply fails to allege facts upon which subject matter jurisdiction can be based." *Id.* In that case, "the plaintiff, in effect, is afforded the same procedural motion as he would receive under a Rule 12(b)(6) consideration." *Id.* "[A]ll facts alleged in the complaint are assumed true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States,* 585 F.3d 187, 192 (4th Cir.2009).

#### 2. Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin,* 980 F.2d 943, 952 (4th Cir.1992); *see also Edwards v. City of Goldsboro,* 178 F.3d 231, 243–44 (4th Cir. 1999). A complaint states a claim under 12(b)(6) if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. In evaluating the complaint, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, ... bare assertions devoid of further factual enhancement[,] ... unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,* 591 F.3d 250, 255 (4th Cir.2009) (citations omitted).

### B. Analysis

#### 1. Justiciability

Defendant Virginia Surety contends plaintiffs have not suffered an injury-in-

fact, and thus cannot satisfy the requirements for constitutional standing under Article III, because if plaintiffs had attempted to collect benefits under the insurance program generally, and under their Health Benefit specifically, they could have collected those benefits in accordance with the governing policy terms. Moreover, defendant Virginia Surety argues, even if the insurance program's fees improperly were increased, plaintiffs have suffered no injury-in-fact where they received the benefit of their bargain, namely an enforceable and valid insurance policy. Defendant's argument turns on the application of N.C. Gen.Stat. § 58–50–15(b) and its effect on the insurance program.

■ To satisfy Article III's standing requirements, a plaintiff must show that: 1) he has suffered an injury-in-fact; 2) the injury is fairly traceable to the challenged action of defendant; and 3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000); *Friends for Ferrell Parkway, LLC v. Stasko*, 282 F.3d 315, 320 (4th Cir.2002). An injury-in-fact is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130,

119 L.Ed.2d 351 (1992); *see also Cooksey v. Futrell*, 721 F.3d 226, 235 (4th Cir.2013).

■ Plaintiffs allege the insurance policies underlying the Disability Benefit and Health Benefit are void, and, therefore, violations of the UDTPA and North Carolina common law exist because premiums were collected in the form of program fees for void insurance policies. They contend the policies which provided benefits for enrollees of both the Disability Benefit and Health Benefit are void because those policies were not issued to, or in the name of, an entity falling into a category of permissible "blanket accident and health insurance" policy holders, as enumerated N.C. Gen.Stat. § 58–51–75(a).[12] (Am. Compl. ¶¶ 113–15). In particular, plaintiffs contend the trust to which the policies were conveyed is not an "association of persons having a common interest or calling ... *formed for purposes other than obtaining insurance.*" N.C. Gen.Stat. § 58–51–75(a)(5) (emphasis added).

Plaintiffs also allege the policy underlying the Health Benefit is void because that policy was not approved by the Commissioner,[13] and because it contains a subrogation provision, which is prohibited by 11 N.C.A.C. § 12.0319 (the "anti-subrogation rule").[14] Plaintiffs suggest the inclusion of a prohibited subrogation provision is indicative of the fact that defendant Virginia Surety never submitted the Health Benefit

---

**12.** Effective July 1, 2013, this statute has been amended to encompass conduct at issue here. *See* N.C. Gen.Stat. § 58–51–75(a)(10). As there is no clearly expressed legislative intent that the statute be applied retroactively, *In re Will of Mitchell*, 285 N.C. 77, 79–80, 203 S.E.2d 48 (1974), the amendment is not retroactive, and the court examines this case under the statutory law in place during the relevant time.

**13.** This argument applies only to the Health Benefit, underwritten by defendant Virginia

Surety, where plaintiffs' concede the policy providing coverage for the Disability Benefit, underwritten by defendant National Union, was approved by the Commissioner. (Am. Comp. ¶ 111).

**14.** This regulation, promulgated by the Commissioner and published in Title 11 of the North Carolina Administrative Code, provides "Life or accident and health insurance forms shall not contain a provision allowing subrogation of benefits." 11 N.C.A.C. § 12.0319.

component of the insurance program to the Commissioner for approval.

Plaintiffs have suffered neither a concrete nor imminent injury, because the insurance policies supplied through enrollment in the Disability Benefit and Health Benefit are valid and enforceable under North Carolina law, despite the alleged deficiencies. As noted, § 58–50–15(b) addresses non-compliance with Articles 50 through 55 of the Insurance Law, which, taken together, impose certain requirements for accident and health insurance, medicare, and long-term care insurance. *See generally* N.C. Gen.Stat. § 58–50–1 through § 58–55–80. Section 58–50–15(b) provides in relevant part that "[a] policy delivered or issued for delivery to any person in this State in violation of Articles 50 through 55 of [Chapter 58, the Insurance Law] shall be held valid but shall be construed as provided in Articles 50 through 55 of this Chapter."

The language of § 58–50–15 plainly states that policies that violate any of the statutory terms set forth in these articles are valid, but the policy provisions in conflict with the statutory terms are of no effect. N.C. Gen.Stat. § 58–50–15(b); *see Stainback v. Investor's Consol. Ins. Co.*, 64 N.C.App. 197, 197–98, 306 S.E.2d 532 (1983) (addressing § 58–50–15(b)'s predecessor, § 58–258(b); holding violation of statutory requirement did not make insurance policy void, merely voidable).

■ By operation of statute, violation of mandatory provisions of the Insurance Law "merely gives [rise to] . . . the right to cancel the policy." *Stainback*, 64 N.C.App. at 198, 306 S.E.2d 532. For example, in *Stainback*, the plaintiff insured's employer failed to comply with a statutory provision requiring a certain percentage of all employees participate in the insurance program. *Id.* at 197–98, 306 S.E.2d 532. When the defendant insurer

refused to cover a claim made by plaintiff, and plaintiff subsequently sued, the defendant insurer attempted to assert plaintiff's employer's violation of the Insurance Law as grounds to void the policy. *Id.* However, the North Carolina Court of Appeals held that without prior affirmative action to void the policy, the non-compliant policy merely was voidable. *Id.* at 198, 306 S.E.2d 532.

■ Nevertheless, § 58–50–15 does not apply to all types of insurance. *See, e.g., Richardson v. Bank of Am. N.A.*, 182 N.C.App. 531, 554–55, 643 S.E.2d 410 (2007) (holding credit insurance policy, governed by Article 57 void *ab initio*). Nor does it require all policies governed by Articles 50 through 55 be held valid, if those policies violate a statutory requirement imposed by another article of the Insurance Law. *See generally, e.g.*, § 58–3–1, et *seq.* (providing general regulations for all insurance policies). In other words, all policies that are governed by Articles 50 through 55, that are noncompliant therewith, are voidable. *See* § 58–50–15; *Stainback*, 64 N.C.App. at 197–98, 306 S.E.2d 532. However, if the defect is a result of noncompliance with a statutory provision other than Articles 50 through 55, then § 58–50–15 has no effect and the policy may be declared void through application of traditional principles of contract and insurance law. *See Richardson*, 182 N.C.App. at 554–55, 643 S.E.2d 410. *See generally* § 58–3–1 *et seq.* With these principles in mind, the court examines the alleged defects raised by plaintiffs.

Plaintiffs do not allege a violation of a generally applicable insurance statute. Rather, each ground stems from alleged violations of Article 51, concerning the "Nature of Policies." For example, plaintiffs allege the insurance policies providing benefits under the Disability Benefit and Health Benefit were sold to an impermissi-

ble policy holder, the trust. Assuming this allegation is true, as the court must on a facial challenge to standing, it does not give rise to a cognizable harm. As an initial matter, plaintiffs never attempted to collect benefits under either policy. In addition, if plaintiffs had made a claim against either insurance policy, plaintiffs would have been entitled to have their claims processed in accordance with the policy terms. Pursuant to § 58–50–15(b), the policies held by the trust were valid and enforceable by plaintiffs, until such time as plaintiffs cancelled their enrollment in the insurance program.[15]

■ Defendant's alleged failure to seek and obtain the Commissioner's approval for the policy funding the Health Benefit, prior to selling enrollment in such benefit, must fail for the same reason. Although the Commissioner must approve the terms of insurance policies offered for sale in North Carolina, in this case, because of the type of insurance at issue, defendant Virginia Surety's failure to obtain the Commissioner's approval amounts to a violation of Article 51. *See* N.C. Gen.Stat. § 58–51–

95. As with other violations of Article 51, § 58–50–15(b) requires the court hold unapproved policies, such as the Health Benefit component of the insurance program, valid and enforceable.[16] In addition, even though the policy contains a prohibited subrogation provision, that fact still cannot render the Health Benefit invalid. The Commissioner's power to promulgate the anti-subrogation rule flows exclusively from § 58–50–15(a). *In re Declaratory Ruling by the N.C. Comm'r of Ins. Regarding 11 N.C.A.C. 12.0319*, 134 N.C.App. 22, 28–29, 517 S.E.2d 134 (1999); *see also Charlotte Liberty Mut. Ins. Co. v. North Carolina ex rel. Lanier*, 16 N.C.App. 381, 384, 192 S.E.2d 57 (1972) (noting that the provision of the Insurance Law authorizing the Commissioner to "adopt . . . rules" confers only the power to administer the laws of North Carolina with regard to the insurance industry). Because the statute conferring power to promulgate that rule falls within the broad reach of § 58–50–15(b), finding a policy in violation of the anti-subrogation rule void *ab initio* would

---

15. Policies non-compliant with N.C. Gen.Stat. § 58–51–75, concerning "Blanket accident and health insurance" may still comply with N.C. Gen.Stat. § 58–51–80, concerning "Group accident and health insurance." Indeed, all policies non-compliant with § 58–51–75 are evaluated under § 58–51–80. However, where § 58–51–80 still is within Article 51 of the Insurance Law, § 58–50–15(b) still applies and the policy merely was voidable for the reasons stated.

16. Plaintiffs suggest defendant Virginia Surety's failure to obtain the Commissioner's approval for the Health Benefit component of the insurance program amounts to a violation of § 58–3–150(a) and (b), where § 58–3–150, rather than § 58–51–1, potentially could void the policy. However, § 58–3–150, concerning forms to be approved by the Commissioner, does not apply to the insurance program. While N.C. Gen.Stat. § 58–3–1 et *seq.*, a section of Article 3 addressing general insurance

regulations, and N.C. Gen.Stat. § 58–51–1 et *seq.*, a provision of Article 51 addressing policies of insurance against loss or damage from sickness, bodily injury, or death, require insurers take the same action and have their forms approved by the Commissioner prior to offering policies for sale, § 58–3–1 et *seq.*, applies generally, while § 58–51–1 et *seq.*, applies only to insurance products such as the policies funding the Disability Benefit and Health Benefit. When two statutes regulate the same conduct, it is well-established that the statute "special and particular shall control over the statute general in nature . . . unless it clearly appears that the legislature intended the general statute to control." *Trustees of Rowan Tech. College v. J. Hyatt Hammond Assocs., Inc.*, 313 N.C. 230, 238, 328 S.E.2d 274 (1985) (citing *Seders v. Powell*, 298 N.C. 453, 459, 259 S.E.2d 544 (1979)). Thus, any failure by defendant to obtain approval for its forms is a violation of Article 51 rather than a violation of Article 3.

expand the Commissioner's power beyond that authorized by statute.

▮ Plaintiffs also claim that even if the policies underlying the Disability Benefit and Health Benefit are valid, unilateral increases in premiums collected for such policies, in the form of increased program fees in both 2005 and 2009, constitute an injury-in-fact, where such premium increases allegedly were not approved by the Commissioner. Even if they were not injured merely by making the introductory premium payments of $95.00 per year, they contend they were injured by increases in membership fees for enrollment in the Disability Benefit and Health Benefit, occurring in both 2005 and 2009, made each time without the Commissioner's prior approval, as required by N.C. Gen.Stat. § 58–51–95(f). (Am. Compl. ¶¶ 41–46). Plaintiffs suggest that those premium increases were invalid and that they have suffered an economic injury corresponding to the difference between the post-increase premiums, and the introductory premium of $95.00 per year. Plaintiffs' argument in defense of the motion must fail because, again, plaintiffs suffered no harm. As with the other alleged deficiencies, plaintiffs have never attempted to collect benefits under the insurance program. In addition, plaintiffs received the benefit of their premium payments as the Disability Benefit and Health Benefit were enforceable consistent with their terms. Moreover, plaintiffs have not alleged and do not suggest the Commissioner would have rejected a premium increase.[17]

▮ Finally, plaintiffs contend § 58–50–15(b) is inapplicable because the policies funding the Disability Benefit and Health Benefit, were delivered to a policy holder, a trust, located outside the state of North Carolina. Thus plaintiff argues the policies was not "delivered or issued for delivery" in North Carolina. The trust is the appropriate focal point of the court's analysis, where § 58–51–75 refers to the issuance of policies to an entity separate and apart from persons receiving benefits under such policy. See N.C. Gen.Stat. § 58–51–75(a) (referring to policies "issued to" among other things common carriers, employers, or institutions of learning).

As an initial matter, plaintiffs' response to defendant Virginia Surety's motion to dismiss is the first instance in which plaintiffs have alleged the trust is not located in North Carolina. Indeed, plaintiffs previously have not alleged any location for the trust. Because plaintiffs' amended complaint does not contain allegations that speak to the trust's location, the court will not consider any location suggested in briefing. See Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."); see also Barclay White Skanska, Inc. v. Battelle Mem'l Inst., 262 Fed.Appx. 556, 563 (4th Cir.2008) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.") (citations and quotations omitted); Bratcher v. Pharm. Prod. Dev., Inc., 545 F.Supp.2d 533, 542–43 (E.D.N.C.2008). Considering the allegations in the complaint, it fairly may be inferred that the trust is located in this state, where plaintiffs repeatedly allege defendants violated North Carolina law (Am. Compl. ¶¶ 20, 25, 29, 87–88, 107–10, 117–120, 122, 218), and that the policies were not approved by the Commissioner. (Id. ¶¶ 96–97, 122, 134, 193).

---

**17.** Plaintiffs state that the premiums were "excessive." However, the amended complaint does not suggest the premiums charged for the valid and enforceable Health Benefit were excessive in comparison to the benefits offered thereunder.

 Under North Carolina law, delivery of an insurance policy is a matter of intent. *See Life & Cas. Ins. Co. of Tenn. v. Gurley,* 229 F.2d 326, 329 (4th Cir.1956); *Hardy v. Aetna Life Ins. Co.,* 154 N.C. 430, 70 S.E. 828, 832 (1911). Physical transfer of the policy is not essential to delivery. Rather, courts in North Carolina look to whether 1) the insurer intended to give the policy legal effect as a completed instrument; 2) the insurer evidences that intent by placing the instrument beyond its control, "though not necessarily beyond [its] physical control"; and 3) the insured acquiesces in the insurer's intention. *Hardy,* 70 S.E. at 832. Resolution of plaintiffs' argument requires analysis of defendant HealthExtras' actions.

The policies conveyed to the trust were "issued for delivery" in North Carolina. Defendant HealthExtras intended to give the insurance program legal effect because defendant HealthExtras accepted plaintiffs' enrollment into the insurance program. (Am. Compl. ¶¶ 40, 65). Defendant HealthExtras placed the policies issued under the insurance program beyond its control, by placing them with the trust, a legally distinct entity. (*E.g., id.* ¶¶ 53–55). Finally, the trust acquiesced to defendant HealthExtras' intent through acceptance and by becoming the policy holder. (*Id.* ¶¶ 44, 49, 72, 186–88). Because the policies issued pursuant to the insurance program were delivered to the trust as policy holder, § 58–50–15(b) requires that such policies be held valid under North Carolina law, where the only alleged defects in the policies violations of Article 51 of the Insurance Law.

In sum, plaintiffs lack Article III standing to prosecute their claims against underwriter defendant Virginia Surety. Plaintiffs have suffered neither a concrete nor an imminent injury. The insurance program, consisting of both the Disability Benefit and Health Benefit, is valid and enforceable under North Carolina law. Had plaintiffs made a claim, the underwriter would have been obligated to process it in accordance with the terms thereof. Plaintiffs have never made a claim, and there is no allegation in the amended complaint that plaintiffs currently have any identifiable claim for disability benefits. (*See* Am. Compl. ¶ 159(e)). Based on the foregoing, plaintiffs cannot show an injury-in-fact accruing from the actions of defendant Virginia Surety, and their claims against this defendant, and those associated therewith, must be dismissed for lack of standing. *Stasko,* 282 F.3d at 320. So goes then claims also against defendant HealthExtras and defendant Alliant premised on the policy underwritten by defendant Virginia Surety.

Plaintiffs' only remaining claims then are against defendant HealthExtras, defendant Alliant, and defendant National Union, concerning the Disability Benefit. So, too, these must fail. As with the Health Benefit, plaintiffs allege the Disability Benefit is invalid, because the policy providing funding for that benefit also was issued to an impermissible policy holder, and because premium increases, occurring in 2005 and 2009, were not pre-approved by the Commissioner. As discussed above, plaintiffs' theories of liability do not afford them Article III standing, because the insurance policies providing coverage for the Disability Benefit and Health Benefit enrollees are valid and enforceable under North Carolina law.

 The court is under an independent obligation to examine its own subject matter jurisdiction, and ensure plaintiffs properly may bring their claims against all defendants. *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) ("The federal courts are under an independent obligation to

examine their own jurisdiction, and standing is perhaps the most important of the jurisdictional doctrines.") (alterations, citations, and quotations omitted); *see also Herlihy v. Ply–Gem Indus., Inc.*, 752 F.Supp. 1282, 1291 (D.Md.1990). If plaintiffs lack standing against any defendant, the court must dismiss plaintiffs' claims against it. *See FW/PBS*, 493 U.S. at 231, 110 S.Ct. 596; *Herlihy*, 752 F.Supp. at 1291. Plaintiffs claims against the alleged scheme architect, broker, and underwriter defendants rest on the insurance policies being void from their inception, or on the improper nature of the 2005 and 2009 premium increases. As discussed at length above, § 58–50–15(b) forecloses plaintiffs' theories of liability. *See supra.* Accordingly, plaintiffs lack standing to pursue their claims against any defendant to this action and all claims must be dismissed.

### 2. Failure to State a Claim Upon Which Relief Can Be Granted

 Even if the court could consider plaintiffs' statement in briefing that the trust to which the policies were issued is located in another state, plaintiffs' amended complaint, grounded on violations of North Carolina law, must be dismissed. Plaintiffs' purported theories of liability give rise to no right of recovery under the laws of some other, unknown state in which the trust may be located. This ground for dismissal similarly may be applied to plaintiffs' claims against defendant National Union, and defendants HealthExtras and Alliant, concerning the Disability Benefit. "Where the face of a complaint plainly fails to state a claim for relief, a district court has 'no discretion' but to dismiss it." *See Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 655 n. 10 (4th Cir.2006) (quoting 5A Charles Alan Wright et al.,

Fed. Prac. & Proc. § 1357 (2d ed.1990)); *see also* 5B Charles Alan Wright et al., Fed. Prac. & Proc. § 1357 (3d ed. 1998 & Supp.2015). Here, because plaintiffs' claims so closely are tied to violations of the Insurance Law, if the trust is located outside this state, that fact is fatal to plaintiffs' case.

 An insurance policy is a contract, and, in the absence of circumstances indicating a different intention, is governed by the law of the state in which the policy was delivered. *Roomy v. Allstate Ins. Co.*, 256 N.C. 318, 322–23, 123 S.E.2d 817 (1962). Unless otherwise provided, policies issued for delivery outside the state of North Carolina, therefore, may not be scrutinized under the contours of this state's Insurance Law. Rather, such policies must be measured by the laws of the states in which they were issued. Where some other state's insurance law controls, because plaintiffs have alleged only violations of North Carolina's Insurance Law as the basis for their claims, any violation of that code is of no effect.

### C. Review of the Court's August 23, 2013, Order Adopting the Magistrate Judge's Memorandum and Recommendation and Denying Motions to Dismiss

The court has cause to revisit earlier ruling, where on August 23, 2013, it denied motions by the other defendants to dismiss the original complaint, then filed only on behalf of plaintiff Petruzzo. The court considered the validity of insurance providing coverage for enrollees in the Disability Benefit under North Carolina law.[18] *Petruzzo v. HealthExtras, Inc.*, No. 5:12–CV–113–FL, 2013 WL 4517273 (E.D.N.C. Aug. 23, 2013).

---

**18.** As noted, the original complaint did not allege the existence of the Health Benefit, nor the existence of the policy providing coverage for Health Benefit enrollees.

The crux of the court's prior ruling was the distinction between "insurance policies for which the insurer has failed to obtain the required advance approval and those which could never be approved because they violate North Carolina insurance laws." *Id.* at *5 (citing *In re Port Pub. Co.*, 231 N.C. 395, 397–98, 57 S.E.2d 366 (1950)). It then was the court's opinion that this case fell more closely in line with those addressing insurance policies that never could have been approved. This is not correct.

■■■■ Under North Carolina law, insurance contracts are not void simply because they violate a provision of the Insurance Law. *Robinson v. Sec. Life & Annuity Co.*, 163 N.C. 415, 79 S.E. 681, 684–85 (1913). The law draws a distinction between contracts entered into in violation of provisions requiring the Commissioner's approval, *see id.*, and contracts that contain coverage provisions in violation of limits imposed by statute. *See Richardson v. Bank of Am. N.A.*, 182 N.C.App. 531, 554–55, 643 S.E.2d 410 (2007) (addressing limitations imposed by N.C. Gen.Stat. § 58–57–1). Contracts falling into the former category merely are voidable, while contracts in the latter category are void *ab initio. Compare Home Indem. Co. v. Hoechst Celanese Corp.*, 128 N.C.App. 226, 233, 494 S.E.2d 768 (1998), *with Richardson*, 182 N.C.App. at 554–55, 643 S.E.2d 410.

The parties' central dispute addressed in the court's prior order concerned the composition of the insured class to which this permissible coverage was disseminated. Section 58–51–75 does not place explicit limits on the class of permissible "blanket" policy holders.[19] Because the statute to which plaintiff anchored his claims does not provide an affirmative limitation, a violation of that statute will not work to void plaintiff's insurance coverage. *See Home Indem.*, 128 N.C.App. at 233, 494 S.E.2d 768. Thus, the policy providing coverage under the Disability Benefit merely was voidable, rather than void. Defendants' motions to dismiss improvidently were denied. That order, lodged on the docket at entry number 44, now is set aside.

## CONCLUSION

Based on the foregoing, defendant Virginia Surety's motion to dismiss the complaint, (DE 146), is GRANTED. Because plaintiffs lack standing to sue defendant Virginia Surety, plaintiffs also lack standing to sue the alleged scheme architect, defendant Health Extras, and the broker, Alliant, where plaintiffs' claims against defendants HealthExtras and Alliant arise from deficiencies in the insurance policy underwritten by defendant Virginia Surety, providing the Health Benefit. Where plaintiffs' claims against defendants HealthExtras, Alliant, and National Union, concerning alleged deficiencies in the insurance policy underwritten by defendant Nation Union, providing the Disability Benefit are predicated on the same theories, plaintiffs again lack standing. Because plaintiffs lack standing to sue any defendant in this action under Article III of the United States Constitution, the case must be and is DISMISSED. The clerk is DIRECTED to close this case, which action shall terminate defendant National Union's pending motion for protective or-

**19.** Rather, § 58–51–80 places affirmative limits on the class of entities that permissibly may serve as "group" policy holders, and covers all policies that do not fall into one of the categories enumerated in § 58–51–75. Although, under the reasoning set forth in *Richardson*, a violation of § 58–51–80 may be sufficient to declare a policy issued to an impermissible "group" void, as discussed *supra*, § 58–50–15(b) requires the court to hold any violation of that statute "valid."

der, (DE 171), and its motion for hearing (DE 178).